## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

EDWARD L. BAIN v. COMMONWEALTH OF VIRGINIA.

June 10, 1974.

Record No. 730659.

Present, All the Justices.

*David W. Mullen,* for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Cochran, J., delivered the opinion of the court.

Edward L. Bain was convicted under Code § 18.1-116 [1] (Repl. Vol. 1960) of fraudulently selling, removing or otherwise disposing of a motor vehicle on which he had given a lien to the National Bank of Blacksburg. We granted Bain a writ of error to the judgment order, entered on a jury verdict, sentencing him to serve six months in jail and to pay a fine of $500.

Richard D. Patton, Assistant Vice President of the National Bank of Blacksburg, testified that on April 6, 1972, Bain came to the Bank to obtain a loan. Patton approved a "debt consolidation loan" in the amount of $2,574.01 and referred Bain to a loan clerk for preparation of the necessary papers.

The Commonwealth, over Bain's objection, introduced into evidence a disclosure statement, a note for the amount of the loan, including interest and costs, and a security agreement under which Bain transferred and assigned his 1968 Volkswagen to the Bank as security for the note. Each document was dated April 6, 1972, and bore a signature which purported to be Bain's.

Patton testified that the loan clerk presented the documents to Bain in Patton's presence, although Patton did not observe the signing of the documents. Patton testified, however, that he could verify Bain's signature on the documents.

Patton also testified that Bain promised to deliver the title to the Volkswagen to the Bank so that the Bank's lien could be recorded thereon. Bain failed to deliver the title, and defaulted on the note after making two monthly payments.

In December, 1972, Patton asked Bain to produce the Volkswagen. Bain did not comply, explaining that he had traded in the vehicle for a new car. Clifford E. Bishop, a used car dealer, testified that he had traded Bain a Mercury for the Volkswagen,

---

[1] "Code § 18.1-116. **Fraudulent conversion or removal of property subject to a lien or title to which is in another.** — Whenever any person is in possession of any personal property, including motor vehicles, in any capacity, the title or ownership of which he has agreed in writing shall be or remain in another, or on which he has given a lien, and such person so in possession shall fraudulently sell . . . or otherwise dispose of the property . . . without the written consent of the owner or lienor or person in whom the title is, . . . he shall be deemed guilty of the larceny thereof.

"In any prosecution hereunder, the fact that such person after demand therefor by the lienholder or person in whom the title or ownership of the property is, or his agent, shall fail or refuse . . . to surrender the [collateral], shall be prima facie evidence of the violation of the provisions of this section. . . ."

that the title to the Volkswagen had contained no record of any lien, that he was unaware of any security interest in the car, and that the value of the Volkswagen at the time of trade was approximately $900.

■ We find no merit in Bain's contention that the trial court erred in admitting into evidence the disclosure statement, security agreement and note. The authenticity of Bain's signature on the documents could be shown by direct or circumstantial evidence. *Harlow* v. *Commonwealth,* 204 Va. 385, 389, 131 S.E.2d 293, 296 (1963). *See* McCormick on *Evidence,* § 222 (2d ed. 1972); 7 Wigmore on *Evidence,* § 2131 at 572 (3d ed. 1940). There was ample circumstantial evidence to authenticate Bain's signature. Bain negotiated a loan immediately prior to the preparation of the documents, the loan clerk prepared the documents in Bain's presence, Bain received the benefit of the loan and he made two payments in amounts specified by the note. Moreover, Patton said that he could verify Bain's signature on each of the three documents. These circumstances provided sufficient authentication of the documents for the trial court to admit them into evidence.

■ We also reject Bain's argument that the trial court erred in refusing to give Instruction B-1, which would have defined the lien contemplated by Code § 18.1-116 as one noted upon the title certificate for the Volkswagen. The language of the statute does not permit such a restrictive definition.

The Bank acquired a valid security interest in the Volkswagen when it entered into the security agreement with Bain. Although Code § 46.1-70 (Repl. Vol. 1972) provides for the recording of security interests created in a motor vehicle after the original issuance of the title, the purpose of this statute is to provide a simple means for third party purchasers or creditors to ascertain the existence of a prior security interest. *Maryland Credit Fin. Corp.* v. *Franklin Credit Fin. Corp.,* 164 Va. 579, 583, 180 S.E. 408, 409-10 (1935). But even though the Bank's security interest was unrecorded, and therefore unperfected as to third parties, the Bank was entitled to rely upon and enforce its security agreement against Bain. As Bain's sale of the Volkswagen deprived the Bank of its right to sell the collateral upon default, the Bank's security interest comes within the purview of Code § 18.1-116.

■ The trial court committed no error in overruling Bain's

motions to strike the Commonwealth's evidence. There was ample evidence from which a jury, properly instructed, could find Bain guilty of violating the provisions of Code § 18.1-116. It was not necessary for the Commonwealth to adduce direct evidence that the Bank had not given written consent to Bain to sell the Volkswagen. Under the provisions of the second paragraph of Code § 18.1-116, Bain's failure to surrender the car upon demand was prima facie evidence of his violation of the statute. The evidence was rebuttable, but Bain adduced no evidence in his own behalf. Moreover, there was other circumstantial evidence that the Bank gave no written consent for sale of the vehicle. Patton testified that when he asked Bain for the Volkswagen he informed Bain that the Bank had a lien on the car and that Bain "was not to dispose of the vehicle." This negates any inference that the Bank had consented to Bain's sale of the vehicle.

Nor did the trial court err in refusing Bain's proposed Instruction B-3, which told the jury that the Bank's failure to recover the full amount of the loan was insufficient to establish that Bain acted with fraudulent intent. The trial court correctly ruled that this instruction would give improper emphasis to a single piece of evidence.

Bain has also assigned error to the trial court's refusal to give an instruction defining the fraudulent intent that must be proved in order to obtain a conviction under Code § 18.1-116. Bain offered Instruction B-2, which reads as follows:

"The court instructs the jury that the fraud referred to in the indictment means that the defendant must have criminally, intentionally and feloniously intended to deceive and injure the National Bank of Blacksburg."

The trial court refused this instruction for the reason that it was not a correct definition of the fraud involved. The trial court ruled that the fraud contemplated by the statute "is holding up to be true that which is in fact not true" so as to deceive a purchaser acting under the assumption that he had obtained a vehicle on which there was no lien. This reasoning of the trial court was erroneous. The statute, properly construed, requires proof that the fraudulent intent be directed against "the lienor or person in whom the title is" rather than against an innocent

purchaser or subsequent creditor. But, as the trial court concluded, the instruction failed to define fraud correctly.

We hold that the fraud contemplated by Code § 18.1-116 is an act by a debtor intended to deprive a secured creditor of his collateral by appropriating it to the debtor's own use. We adopt this definition from the language used in the statute and by analogy with our construction of the Virginia embezzlement statute, Code § 18.1-109 (Repl. Vol. 1960). In *Whitlow* v. *Commonwealth*, 184 Va. 910, 918, 37 S.E.2d 18, 21 (1946), we held that the mental element of the crime of embezzlement was "a fraudulent purpose to deprive the owner of his property and to appropriate the same." In *Stegall* v. *Commonwealth*, 208 Va. 719, 160 S.E.2d 566 (1968), we held that a man who rented a motor vehicle and fraudulently converted it to his own use might be found guilty of embezzlement, even though he formed the intent to steal the vehicle after lawfully taking possession. We also held that the requisite intent may be inferred from all the facts and circumstances. In the present case, Bain could have been found guilty of larceny even though the jury believed that he did not form the intent to convert the vehicle to his own use until after he had obtained his loan.

The definition of fraud which we herein approve is to be distinguished from the definition of fraud set forth in civil cases relied upon by Bain. These cases hold that fraud requires a misrepresentation of fact intended to induce another to part with something of value. *See, e.g., Jefferson Standard Life Insurance Co.* v. *Hedrick*, 181 Va. 824, 833-34, 27 S.E.2d 198, 202 (1943); *Moore* v. *Gregory*, 146 Va. 504, 523, 131 S.E. 692, 697 (1925).

It was the responsibility of Bain's counsel to prepare and offer a properly worded instruction. As Bain's Instruction B-2 did not correctly define fraud within the meaning of Code § 18.1-116 the trial court did not commit reversible error in refusing the instruction.

*Affirmed.*