June A. LEWIS

v.

**FIRST NATIONAL BANK OF STUART.**

C.A. No. 85–0312.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 20, 1986.

Gregory F. Patton, Cooley & Compton, P.C., Hillsville, Va., Q. Carter Greer, Greer & Greer, Rocky Mount, Va., for plaintiff.

Jane S. Glenn, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This case comes before the court on defendant's Motion for Summary Judgment. It is undisputed that the defendant, First National Bank of Stuart (the "Bank"), initiated the criminal prosecution of the plaintiff, June A. Lewis ("Lewis"), for the fraudulent removal of security subject to a lien. Subsequently, Lewis filed a complaint in this court in which she alleged that the Bank's actions constituted malicious prosecution and intentional infliction of emotional distress. Jurisdiction of this court is based on diversity of citizenship. 28 U.S.C. § 1332. In seeking summary judgment, the Bank maintains that it had probable cause to initiate the proceedings against the plaintiff, that it sought and received advice of counsel in determining to institute the criminal action, and that the case was compromised in a manner unfavorable to the plaintiff before this civil action was brought.

The standard for deciding a motion for summary judgment is well settled. A party who moves for summary judgment bears the burden of showing both the absence of genuine issue of material fact and that judgment is warranted as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.*, 381 F.2d 245 (4th Cir.1967). The court must draw inferences most favorable to the party opposing the motion when deciding whether this showing has been made from the documentary materials before it. *United States v. Diebold Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment should be granted when the evidence is such that it "would require a directed verdict for the moving party." *Anderson v. Liberty Lobby, Inc.*, 54 U.S.L.W. 4755, 4758 (June 25, 1986), quoting *Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944). In considering the evidence in a light most favorable to the party opposing the motion, the court must resolve any conflicts in evidence in favor of the nonmovant, but may consider uncontroverted and unimpeached evidence unfavorable to the nonmovant. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 243 n. 14 (4th Cir.1982) (J.N.O.V.); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (summary judgment). Rule 56(c) of the Federal Rules provides that summary judgment "shall be rendered forthwith if the ... [evidence] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has stated, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). (emphasis in original).

### I.

Looking at the evidence in a light most favorable to the nonmovant, the plaintiff, the evidence is as follows. Lewis obtained a series of loans from the Bank. One was an unsecured, single payment 90–day note for $1,000.00. After several renewals of the 90–day note, it was to be due August 30, 1982, with the payment to be $1,306.03. The other, after several refinancings, was

an installment loan for $3,800.16, secured by Lewis's 1978 Ford Pick-up truck. Between June 20, 1981 and February 6, 1982, Lewis made payments on the installment loan which reduced the principal amount to $3,169.08. This loan was refinanced on February 6, 1982. The total amount $4,271.64 was to be repaid in 36 monthly installments of $118.64. However, on May 10, 1982, another installment loan was made to Lewis refinancing the previous loan. The principal on this loan was $4,000, to be repaid with interest charges of $1,475.96 over 36 months, in payments of $152.11.

On September 3, 1982, Lewis traded the 1978 Ford Pick-up in for a 1976 Fiat at Michael's Auto Sales in Mount Airy, North Carolina. She received a check for $1,400 which she turned over to the Bank in full satisfaction of the 90–day note, with a credit of $91.06 applied to the installment loan. A second security agreement was signed exchanging the 1976 Fiat for the 1978 Ford as security.

At an October 28, 1982 meeting with Michael Hayes ("Hayes"), the Bank's Ararat, Virginia branch manager, Lewis told Hayes that she was moving to California to collect child support and alimony payments from her ex-husband. Her husband was in arrears in his payments, and she needed to appear in court to seek payment. Lewis told Hayes that she would use the money thus obtained to pay off the loan, or trade the car in to obtain funds. Lewis asserts that "[h]e said that I could take the car with me and as long as I kept those payments made [sic]." Thus, according to Lewis's own testimony, the permission to remove the car to California was contingent upon her making regular payments on the loan. While Hayes denies having given her permission, the court assumes for the purposes of the motion that such permission was given.

Lewis admittedly knew that she needed permission to remove the car from its original location for an extended period. It is undisputed that Lewis did not obtain written permission to take the Fiat to California. One of the terms of the security agreement reads: "9. *Use.* You promise:

(e) not to take it outside Virginia (except temporarily in its normal use) and not to change its permanent location."

Lewis also told Hayes that she had obtained a Post Office Box in Ararat, Virginia to which any mail should be sent, and that she would later arrange for a forwarding address so that she would receive any correspondence from the Bank while she was in California. She also gave Hayes a phone number where she could be reached in California. Lewis left for California on October 31, 1982, arriving there on November 15. She arranged to stay with her friend Annette Warner ("Warner"), at 313 San Del, Vista, while seeking legal assistance and employment. Lewis soon placed a change of address with the Ararat Post Office. She stayed at Warner's house until February or March of 1983.

After Lewis moved to California, three payments were made on the installment loan, one by her in December, and later two by her sister, Doris Scales. Apart from these three payments, no other payments were made on the installment loan from the Bank.

According to an affidavit submitted by Warner, a man identifying himself as Hayes called the Warner residence in early January, 1983, while Lewis was out. He asked Warner "to tell June [Lewis] not to worry....that the bank would work with her, and ... not take the car from her." Warner told Hayes that Lewis was trying to get on welfare. Warner states that later Hayes called again, and after being informed Lewis could not get welfare, told Warner "to tell June not to worry." Sometime later Lewis called the Ararat Branch of the Bank and spoke with an unidentified Bank teller. Lewis left a message with that employee that she could not continue making payments on the loan due to her financial difficulties, and that the Bank should repossess the car. This conversation occurred in or near February, 1983. The employee told Lewis that Hayes would get the message.

Lewis subsequently left Annette Warner's and moved to 233 San Marcos Boule-

vard, near the location of her new employer, the Eipper Aircraft Company, with whom she began work in February 1983. Lewis asserts that she left her new forwarding address with the Vista Post Office. When Eipper relocated in the fall of 1983, Lewis moved again, this time to 28741 Via Las Flores 3346, Murietta, California. Lewis once again left her forwarding address. ·Lewis did not contact the Bank to inform Hayes or anyone else at the Bank of either of these moves.

Due to her failure to make payments on the installment loan, Lewis received a series of letters. A form letter of March 19, 1983, from Rebecca Nowlin ("Nowlin"), Collection Department Manager at the Bank, indicated an amount of $309.28 past due for 28 days. Another form letter, dated April 22, 1983 and signed by Howard Pilson ("Pilson"), an attorney for the Bank, indicated an amount of $460.15 past due for 96 days. This letter threatened legal action to collect on the debt. Yet a third letter, dated May 25, 1983, indicated an amount of $611.02 past due for 128 days. This letter, from Nowlin, indicated at the bottom of the letter that if the amount was not paid by May 31, the Bank would proceed with legal action against Lewis.

Due to her financial difficulties, Lewis in May, 1983 saw an attorney, Richard Ravreby ("Ravreby"), about the possibility of filing for bankruptcy. Lewis later provided Ravreby with a list of her creditors, including the Bank. Ravreby sent a letter to the Bank, dated June 8, 1983, in which he indicated that Lewis was going to file for bankruptcy within the next 60 days, and that the Bank should cease its efforts to collect on the account. Ravreby informed Lewis that she did not have to have any further contact with her creditors. Lewis did not continue to retain Ravreby, and never filed a Petition for Bankruptcy.

After awaiting and receiving no notice of Lewis's Petition of Bankruptcy, Nowlin wrote Ravreby in September, 1983 to inquire about the status of Lewis. Ravreby never responded to this inquiry. ·Nowlin then wrote to Lewis on October 5, 1983 at the 313 San Del, Vista address. In this letter Nowlin demanded the return of the car, or full payment of the loan. Nowlin also informed Lewis that it was a felony under Virginia law to remove collateral from the state without the permission of the lienholder. Finally, Nowlin warned that failure to respond would result in the issuance of a warrant for the plaintiff's arrest. This letter was returned with the notation by the Post Office reading "Moved, Left No Address" despite Lewis's allegation that she had left a forwarding address to each and all of her previous residences.

Nowlin unsuccessfully attempted to call Lewis several times to discuss the problems with the loan between the above demand and Lewis's arrest in March 1984. Lewis did not make any further attempts to contact the Bank about the car or her delinquency in repaying the loan. Hearing nothing from Lewis, Nowlin sought assistance from Anthony Giorno ("Giorno"), Commonwealth's Attorney for Patrick County, Virginia. After Giorno reviewed the file, he suggested that Nowlin contact Pilson, the Bank's attorney, to decide whether action against Lewis was justified.

Nowlin was familiar with the process of swearing out a warrant for someone's arrest for removing collateral from the state without written permission; she had gone through this process several times before against debtors who had removed collateral from Virginia. Nowlin showed Pilson the file containing all the documents relating to Lewis's case. The Bank's understanding in this situation was that any permission to remove the collateral had to be in writing, and therefore any such permission would be in the file. The Bank's practice was to note such permission in the file. Furthermore, Hayes, the Ararat branch manager, did not have authority to give Lewis permission to take the car to California. However, the Bank's policy in a case such as this was not to act on its own, but to consult with Pilson and do whatever he recommended.

After speaking with Nowlin several times and reviewing the file, Pilson advised Giorno by a letter dated January 8, 1984

that in his opinion Lewis had violated Virginia Law and recommended that a warrant should be sworn out against her. Pilson based this opinion on Lewis's long-standing default, her failure to return the car or disclose its location, and generally her failure to communicate with the Bank despite the many letters sent to her. When Giorno received the letter from Pilson, he advised Nowlin to swear out a warrant, which she did on March 15, 1984. The warrant was for the violation of Virginia Code 18.2–115 (1982 Repl.Vol.),[1] which reads in pertinent part:

> Whenever any person is in possession of any personal property, including motor vehicles ... on which he has given a lien, and such person so in possession shall ... fraudulently remove the same from the State, without the *written consent* of the owner or lienor ... he shall be deemed guilty of the larceny thereof. (emphasis added) In any prosecution hereunder, the fact that such person after demand therefore by the lienholder ... shall fail or refuse to disclose to such claimant or his agent the location of the property, or to surrender the same, shall be prima facie evidence of the violation of the provisions of this section. Va. Code § 18.2–115 (1982 Repl.Vol.).

California law enforcement agencies acting on behalf of the Commonwealth's Attorney subsequently determined Lewis's location in California. Lewis was arrested in May 1984, and posted bond. The Commonwealth then initiated extradition proceedings. There being no bail allowed on an extradition warrant, Lewis was rearrested on May 30, 1984, and incarcerated at the Riverside Correctional Facility. She was released on June 16, 1984, and an Order of *Nolle Prosequi* was entered as to the felony charges against her in January, 1985.

## II.

The court must apply the substantive law of Virginia, because this is a diversity action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Actions for malicious prosecution are not favored in Virginia, and the requirements for maintaining such actions are more restrictive than for those of other tort claims. The reason for this disfavor is that criminal prosecutions are essential for the maintenance of an orderly society and citizens should not be discouraged from bringing them for fear of subsequent civil liability. *Lee v. Southland Corp.*, 219 Va. 23, 25, 244 S.E.2d 756, 758 (1978); *Bain v. Phillips*, 217 Va. 387, 393, 228 S.E.2d 576, 581 (1976). However, where the requirements limiting such actions have been met and the proper elements to support an action have been presented, the action will be upheld. *Lee v. Southland Corp.*, 244 S.E.2d at 758; *Bain v. Phillips*, 228 S.E.2d at 581.

To support such an action, a plaintiff must allege and prove (1) that the prosecution was initiated by, or with the cooperation of, the defendant; (2) that the prosecution was terminated in a manner not unfavorable to the plaintiff; (3) that it was without probable cause; and (4) that it was malicious. *Pallas v. Zaharopolous*, 219 Va. 751, 754, 250 S.E.2d 357, 359 (1979); *Lee v. Southland Corp.*, 244 S.E.2d at 758. Probable cause in a malicious prosecution case is defined as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Bill Edwards Oldsmobile v. Carey*, 244 S.E.2d 767 at 772 (1978); *Lee v. Southland Corp.*, 244 S.E.2d at 758–59. This test of probable cause is applied as of the time when the criminal prosecution complained of was instituted. *Bill Edwards Oldsmobile*, 244 S.E.2d at 773; *Bain v. Phillips*, 228 S.E.2d at 581. Therefore, in determining the existence of probable cause, one must look at the evidence available *to the defendant* at the time the criminal proceeding was initiated. Furthermore, the burden is on the plaintiff to establish a lack of probable cause on the part of the defendant. *Niese v. Klos*, 216

---

**1.** Minor amendments have been made to the statute, to take effect on December 23, 1986. These amendments do not affect the substance of the statute, or its application to the instant case. See Va. Code § 18.2–115 (Supp.1986 at 147).

Va. 701, 703, 222 S.E.2d 798, 801 (1976). In Virginia, what circumstances constitute probable cause is an issue of law for the court to resolve. *Clarke v. Montgomery Ward & Co.*, 298 F.2d 346, 348 (4th Cir. 1962).

In summary, the court must apply the following analysis. Resolving all factual conflicts in favor of the plaintiff, and considering all the facts which were known by the Bank or could be charged to the Bank's knowledge as of March, 1984, the court must determine whether there was probable cause to believe that the plaintiff had committed a crime. If there was probable cause, the Bank cannot be liable for malicious prosecution.

In arguing that the Bank acted without probable cause, plaintiff relies heavily on her assertion, which the court must accept as true, that she had *oral* permission to take the car to California. Second, Lewis relies on the fact that Hayes had her original California address and phone number to rebut any suggestion that she was purposely hiding from the Bank. Third, plaintiff relies on her assertion, which the court must accept as true, that Hayes called and left a message for Lewis that she should not worry, and that the Bank would not take the car. Finally, plaintiff notes that she called the Bank, and told a Bank employee that the Bank should repossess the car.

■ In considering whether there was probable cause to support the issuance of the warrant on March 15, 1984, the court begins with the undisputed fact that plaintiff did not have written permission to remove the automobile from Virginia. The absence of such a writing would normally .

make it very simple to determine whether a violation had occurred under Va. Code § 18.2–115. Indeed, it is quite likely that the legislature imposed this written permission requirement so as to facilitate the interpretation and enforcement of § 18.2–115, and to avoid "parol evidence" problems such as that presented by the instant case. Considering the obvious rationale for the written permission requirement, it is not unreasonable to assert that the removal of pledged property from the state without written permission is sufficient in and of itself for the simple determination as to whether a violation of § 18.2–115 is more likely than not.

Plaintiff's argument suggests, however, that the oral permission purportedly extended by Hayes was sufficient to vitiate any finding of "fraudulent" removal, a required element under § 18.2–115. In this context, Lewis notes that Commonwealth's Attorney Giorno later indicated that he would have not undertaken to prosecute the case had he known that Hayes had extended oral permission. Lewis thus suggests that the existence of oral permission, even though qualified, negated the existence of probable cause at the time the warrant was issued.

Notwithstanding Giorno's opinion as to the proper exercise of prosecutorial discretion, the court can only conclude that the existence of oral permission is simply not dispositive for the purposes of the probable cause determination. The court is of the opinion that, in addition to the undisputed absence of written permission to remove the collateral, a number of later developments supported the Bank's decision to seek a warrant on March 15, 1984.[2] As

---

**2.** In her various pleadings, plaintiff seemingly implies that her "intent" should be measured as of the time she removed the vehicle and that subsequent developments are not relevant to the existence of any probable cause that she intended to defraud the Bank of the car the day she left for California. The court disagrees. By its very terms, § 18.2–115 permits consideration of later events (such as an unfulfilled demand for surrender of the collateral) in determining whether there is *prima facie* evidence of a fraudulent removal. In fact a lienholder need not show that the debtor lacked permission at

the time of removal to make out a *prima facie* case. *Bain v. Commonwealth*, 215 Va. 89, 91, 205 S.E.2d 641, 643. Furthermore, as indicated above, the Virginia Supreme Court held in *Bill Edwards Oldsmobile, Inc. v. Carey*, 244 S.E.2d at 773 that probable cause must be assessed as of the time the criminal prosecution was initiated, taking into consideration all events prior to the prosecution. It is only logical to assume that the assessment must be based on the evidence available as of the date of the warrant application rather than the date of the removal of the property.

previously noted, plaintiff failed to maintain her schedule of payments, even after receiving letters from the Bank demanding payment and threatening legal action. Furthermore, even assuming that Hayes contacted Warner in February 1983, the Bank was later unable to contact Lewis directly. In response to its demands, the Bank was notified by an attorney that Lewis intended to file for bankruptcy. Yet no such petition was ever filed and the Bank's efforts to obtain additional information from the attorney were to no avail. The letter constituting a final demand for payment or surrender of the vehicle was returned, indicating to the Bank that it could no longer contact Lewis.

This scenario is in many ways similar to the facts in *Bill Edwards Oldsmobile, Inc. v. Carey*, 219 Va. 90, 244 S.E.2d 767 (1978). There the plaintiff, Mr. Carey ("Carey"), had worked at a car dealership in Charlottesville as a repairman. While working there the plaintiff ordered parts through the dealership for his personal use with the permission of Mr. Edwards ("Edwards"). Edwards and Carey had agreed that Carey could pay for the parts in installments. However, the plaintiff ordered parts faster than he paid for them, building up a bill for over a thousand dollars. The plaintiff did make some payments for the parts. When Edwards approached the plaintiff for full payment, Carey asserted that he would obtain money to pay the bill. The plaintiff then left Charlottesville to go work for Farrish Oldsmobile in Fairfax, after informing a dealership employee that he would be working there. The plaintiff left Charlottesville without paying for the parts. The court noted that the plaintiff was aware of his obligation to pay. 244 S.E.2d at 772. The court found it significant that the plaintiff never returned to Edwards's dealership, and did not inform Edwards or the dealership of his whereabouts or whether he still intended to pay for the parts. 244 S.E.2d at 773. The court thus suggested that it was the duty of the debtor to contact the creditor. While Carey had at one time had permission to order the parts, and had paid for some, his later actions vitiated the earlier permission. The court held that it was reasonable for Edwards to infer that a crime had been committed. 244 S.E.2d at 773.

In the instant case, it was not until March 15, 1984, over one year after the plaintiff, by her own admission, last had contact with the Bank, that the criminal process was finally initiated. In retrospect, it appears to the court that the Bank acted with great forbearance. Even assuming the validity of all the plaintiff's factual assertions in this case, the court concludes that the totality of the information available as of March 15, 1984 was sufficient to support the belief that plaintiff had committed a crime.

Furthermore, Lewis's failure to return the car after the Bank demanded its surrender by itself makes out a violation of § 18.2–115. Under the statute failure to return the collateral upon demand by the lienholder is *"prima facie* evidence of the violation of the provisions of this section."* Va Code § 18.2–115 (Repl.Vol.1982). Where such a failure occurs, even the existence of *written* permission to remove the collateral is immaterial under 18.2–115, as the Bank need not show the lack of such permission to make out a *prima facie* case. *Bain v. Commonwealth*, 215 Va. 89, 91, 205 S.E.2d 641, 643 (1974) (predecessor statute 18.1–116).

Even assuming that Lewis did not actually receive the demand, the court finds that her failure to leave a functional forwarding address or contact the Bank constitutes a waiver of her right to deny that the demand was made. Lewis may argue that her phone conversation with the Bank teller constituted a "surrender" of the vehicle, since she informed the teller that the Bank would have to repossess the car. However, Lewis never contacted any Bank officer to arrange for the repossession of the car nor did she attempt to have it returned to Virginia. Having taken the car to California and then defaulting on the loan, it was incumbent upon Lewis to return the car to Virginia. Her failure to do so was

*prima facie* evidence of a violation of § 18.2–115.

For the above reasons, the court concludes as a matter of law that the plaintiff has failed to sustain her burden of demonstrating an absence of probable cause. Therefore the plaintiff cannot maintain an action against the Bank for malicious prosecution, and the defendant's motion on this issue must be granted. The court thus finds it unnecessary to address the issues of advice of counel and compromise of the prosecution, these issues no longer being dispositive.

### III.

Lewis has also attempted to make out a cause of action for intentional infliction of emotional distress. In order for the plaintiff to prevail on this claim, she must demonstrate four elements. First, that the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where she intended her specific conduct and knew or should have known that emotional distress would likely result. Second, that the conduct was outrageous and intolerable in that it offends the generally accepted standards of decency and morality. The purpose of this requirement is to limit frivolous suits and to avoid litigation where only bad manners and mere hurt feelings are involved.. Third, that there was a causal connection between the wrongdoer's conduct and the emotional distress. Fourth, that the emotional distress was severe. *Womack v. Eldridge,* 215 Va. 338, 341, 210 S.E.2d 145, 148 (1974). It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. *Womack,* 210 S.E.2d at 148.

The plaintiff has identified no evidence demonstrating that the Bank had the specific purpose of inflicting emotional distress on Lewis. There is also no evidence that the Bank intended that Lewis be incarcerated at the Riverside Correctional Facility prior to extradition, that incarceration being the main source of her displeasure.

Second, the conduct of the Bank was not outrageous or intolerable. The Bank, as discussed above, had probable cause to initiate the criminal proceedings against Lewis. The initiation of criminal proceedings against someone under § 18.2–115 with probable cause is not extreme or outrageous as a matter of law. If it were, any prosecution under § 18.2–115 that was terminated would be grounds for a suit, and the statute would be essentially useless, as lienholders would fear being liable for infliction of emotional distress. Third, the plaintiff has failed to produce any evidence that she suffered severe emotional distress due to the actions of the defendant. The plaintiff has done no more than describe the unpleasant consequences of being arrested and incarcerated, consequences which by themselves do not show that the plaintiff suffered severe emotional distress.

The plaintiff would bear the burden of proof at trial of showing all the elements of this cause of action. As the Supreme Court noted in *Celotex v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 54 U.S.L.W. 4775, 4777 (June 25, 1986), where the nonmoving party bears the burden of proof on an issue at trial, that party must through evidence designate specific facts showing that there is a genuine issue for trial. Lewis has failed to produce any evidence of intent on the part of the Bank to inflict emotional distress, or of the severity of her alleged emotional distress. Since plaintiff has failed in her burden of designation specific facts in support of these elements, and since the Bank's actions were not outrageous as a matter of law, summary judgment on this cause of action must be granted to the defendant.

Since the court concludes that the Bank had probable cause to initiate the criminal prosecution of Lewis, and that Lewis has failed to make out a *prima facie* case of intentional infliction of emotional distress, the court finds it necessary to grant summary judgment to the defendant on all counts of the complaint.

The Clerk of the Court is ordered to send copies of the order and opinion to all parties in this case.