COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Elder and Senior Judge Cole
Argued by teleconference

MICHAEL KELLY PUCKETT

MEMORANDUM OPINION[*] BY

v.          Record No. 0060-97-3          JUDGE SAM W. COLEMAN III
                                          JANUARY 13, 1998

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Porter R. Graves, Jr., Judge

Sherwin John Jacobs for appellant.

Eugene Murphy, Assistant Attorney General
(Richard Cullen, Attorney General, on brief),
for appellee.


Michael Kelly Puckett was convicted by a jury of larceny for fraudulently removing property subject to a lien from the premises where Puckett had agreed that it would remain without the consent of the lienholder in violation of Code § 18.2-115. On appeal, he contends the evidence was insufficient to support the conviction. We disagree and affirm the conviction.

When considering the sufficiency of evidence on appeal, we view the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). We may not disturb the jury's verdict unless it is plainly wrong or unsupported by the evidence. Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719,

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

721 (1988).

The evidence proved that Puckett purchased a Melroe Bobcat loader (Bobcat) from Valley Implement Sales, Inc. (Valley) for use in his construction business. Puckett financed the purchase on credit from F & M Bank of Massanutten (Bank). He gave Bank a consumer installment note and entered into a security agreement, granting to Bank a security interest in the Bobcat and two trucks. Under the terms of the security agreement, Puckett promised that the secured property would not be removed from his Fulks Run address in Rockingham County without the written permission of Bank, except for the temporary removal as required for its normal use. Valley recorded the financing statement with the State Corporation Commission, which listed Valley as the secured party in the Bobcat, but listed Bank as the assignee of the security interest. Valley also guaranteed payment of Puckett's promissory note to Bank, and, in return, Bank paid Valley the purchase money for the Bobcat. Pursuant to the terms of the guaranty agreement, Valley accepted responsibility for collection on the note and for repossession of the collateral in the event of Puckett's default.

By April 1995, Puckett defaulted on his note payments to Bank, and Valley unsuccessfully attempted to locate Puckett and the collateral at the Fulks Run address. Eventually, Puckett contacted Valley's representative, Dennis Rawley, and told Rawley where he could find the Bobcat. Rawley did not find the Bobcat

at the location that Puckett gave.

In August 1995, employees of Bank and Valley located the Bobcat at a job site outside of Rockingham County. They confronted Puckett on the site and advised him of their intention to repossess the Bobcat. Puckett sought to arrange a compromise and convinced them to call Rawley to discuss his proposal. When the employees exited the trailer after making the call, they saw Puckett driving away in a truck and the Bobcat was gone.

Subsequently, Bank "called the note" and required Valley, as guarantor, to pay the balance due on the note. The next day, Rockingham County Sheriff's Deputy Carter Ritchie asked Puckett to disclose the location of the Bobcat, but Puckett refused. Neither Bank nor Valley ever gave Puckett permission to remove the property from the Fulks Run address.

Code § 18.2-115 provides that any person possessing personal property subject to a lien who "fraudulently . . . remove[s] such property from the premises where it has been agreed that it shall remain, and refuse[s] to disclose the location thereof . . . without the written consent of the owner or lienor . . . shall be deemed guilty of the larceny thereof."

> [T]he fact that such person after demand
> therefor by the lienholder . . . or his
> agent, shall fail or refuse to disclose to
> such claimant or his agent the location of
> the property, or to surrender the same, shall
> be prima facie evidence of [a] violation of
> the provisions of this section.

Id. "[T]he fraud contemplated by Code § [18.2-115] is an act by

- 3 -

a debtor intended to deprive a secured creditor of his collateral by appropriating it to the debtor's own use."  Bain v. Commonwealth, 215 Va. 89, 93, 205 S.E.2d 641, 644 (1974).

Puckett asserts that the evidence was insufficient to show that he fraudulently removed the secured property because Valley was not a "lienholder."  There is no merit in his argument. Regardless of whether Valley held a valid lien on the Bobcat, Bank did.  Puckett refused to relinquish the Bobcat to Bank's employee when he attempted to repossess it in August 1995.  Also, in April 1995, Puckett misrepresented the Bobcat's location to Valley, who, pursuant to its agreement with Bank, was Bank's "agent" with respect to collection and repossession of collateral.  This evidence was sufficient to establish a prima facie case that Puckett fraudulently removed the property in violation of Code § 18.2-115.  Puckett offered no evidence to show that he did not remove the property from the Fulks Run address for the purpose of depriving the secured party of its collateral or that he temporarily removed the property as permitted for its normal use.  Puckett refused to disclose the location of the secured property to Officer Ritchie as late as the time of his arrest on April 24, 1996.  On these facts, the evidence is sufficient to prove that Puckett fraudulently removed the property from its agreed location without the consent of the lienholder in violation of Code § 18.2-115.

The fact that the indictment charged that Puckett

fraudulently removed the property "on or about April 10, 1996" is not fatal and does not render the evidence insufficient to prove the charged offense. The offense occurred whenever Puckett fraudulently withheld the property from the lienholder, including April 10, 1996. Moreover, "the Commonwealth may charge that an offense occurred on a non-specific date or prove a date other than that alleged, if the date is not of the essence of the offense or not shown to be significant." Marlowe v. Commonwealth, 2 Va. App. 619, 622, 347 S.E.2d 167, 169 (1986) (citing Code § 19.2-226(6)). Larceny is a "continuing offense and is being committed every moment of the time during which the thief deprives the owner of the stolen property or its possession." Hope v. Commonwealth, 10 Va. App. 381, 387, 392 S.E.2d 830, 834 (1990). The Commonwealth's evidence showed that Puckett's larceny of the secured property occurred continuously from sometime in April 1995 through April 24, 1996, and, therefore, sufficiently proved that appellant violated Code § 18.2-115 on or about April 10, 1996, as alleged in the indictment.

For these reasons, we affirm the larceny conviction.

Affirmed.