COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia

VASHON NICKETTA CANTY

MEMORANDUM OPINION* BY
v.      Record No. 0844-21-3      JUDGE RICHARD Y. ATLEE, JR.
AUGUST 30, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Stacey W. Moreau, Judge

M. Lee Smallwood, II, Deputy Public Defender, for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a bench trial, the Circuit Court of the City of Danville ("trial court") convicted

appellant Vashon Nicketta Canty of two counts of making a false application for public assistance,

in violation of Code § 63.2-502, and two counts of obtaining five hundred dollars or more of public

assistance by means of false statement or false representation, in violation of Code § 63.2-522.

Canty challenges the sufficiency of the evidence to sustain her convictions. For the following

reasons, we affirm.

I. BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v.*

*Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625,

629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

On September 14, 2017, Canty applied for public assistance. On her application she listed her physical address and stated that her employment with Southern Virginia Higher Education Center ended on July 17, 2017, due to "Illness/Incapacity of Self/Dependent." She stated that she had received her final paycheck on August 16, 2017.

Public assistance applications are approved for a twelve-month period, but applicants are required to fill out a mid-year interim report. An interim report was mailed to Canty's address of record. Danville Department of Social Services ("DSS") received Canty's completed interim report on February 23, 2018. On the interim report, Canty stated that she did not have any earned income and that there was no change in her employment status since her job ended in July 2017. Canty signed the form on February 4, 2018.

Canty renewed her application for public assistance on July 17, 2018. A second mid-year interim report was mailed to Canty's address. DSS received this second interim report on February 25, 2019. Canty once again reported that she did not have earned income and her employment status did not change. Canty's signature appears on the signature line.

Using a third-party employment verification platform, DSS discovered that Canty may have been employed while receiving public assistance. Wanda Redd, a fraud investigator for Danville DSS, investigated further. At trial, she testified that she sought Canty's employment records from two potential employers. From these records, Redd discovered that Canty had resumed employment with Southern Virginia Higher Education Center and received "Regular Pay" from December 15, 2017, through April 16, 2018. Redd also learned that Canty had started working for Telemon Corporation on August 23, 2018, and she received paychecks from September 7, 2018,

- 2 -

through May 7, 2019. Canty's income exceeded the income limit to receive public assistance benefits from September 2017 through January 2019.

Canty testified at trial. She explained that she was on "medical leave" and waiting for disability payments when she applied for public assistance in September 2017. She conceded that she returned to work at Southern Virginia Higher Education Center on December 20, 2017, and worked there until April 2018. She denied signing the February 2018 interim report. She explained that because of allergies and an abusive relationship, she was moving around and not staying at her house. But she admitted that no one else lived at the house[1] and that she still had all her mail sent there. Canty acknowledged that the February 2018 interim form had the box checked to say that she did not start or stop a job, but she explained that she "didn't start or stop a new job," she "returned to [her] current employer." Canty also testified that she did not feel that she had income because she "thought that income meant you had money to spend and money coming in." Because her bank account was "in the red" and her rent payments automatically took all the money, she did not think she had any income.

Canty acknowledged that she started working at Telemon on August 23, 2018. She testified that she left a message for her case worker telling him that she had started at Telemon. She denied signing the February 2019 interim report, and she accused the person she was staying with at the time of signing the interim report and using her benefits.

During cross-examination, Canty acknowledged that when she picked up her benefits card, she signed an authorization form. She agreed that the signature on the authorization form was her

---

[1] Despite stating that she was the only person in the household on her initial benefits application, Canty's boyfriend was living in the house with her at that time. But he was in jail from the end of 2017 to August 2020, meaning he did not have access to the house or mail during the relevant period.

signature. Canty also agreed that her signature on the authorization form and the disputed signature on the February 2019 interim form were similar, though she still denied signing the interim report.

After testifying, Canty renewed her motion to strike, again contending that there was no intention to defraud. She also argued that she did not sign the February 2018 and February 2019 interim reports and that her testimony had not been impeached. The trial court concluded that the signature on the February 2018 interim report was the same signature as the one that appeared on the authorization form, which Canty acknowledged was hers. It also concluded that it defied common sense that some "abstract person" got her report out of the mail. It noted that the benefits were being posted to Canty's account and being used. Accordingly, the trial court denied the renewed motion and convicted Canty of two counts of making a false application for public assistance and two counts of obtaining five hundred dollars or more of public assistance by means of false statement or misrepresentation. This appeal follows.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion

might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *The evidence was sufficient to prove Canty signed the interim forms*.

Canty argues that the evidence is insufficient to sustain her convictions because the Commonwealth failed to prove that Canty signed the two interim reports that are the basis of the convictions. Canty argues that the Commonwealth did not call a witness familiar with Canty's handwriting to identify the signature. Canty also contends that the trial court did not compare the contested signature with a verified sample. We disagree.

While the Commonwealth *may* establish the authenticity of a signature on a document using either an expert witness or a lay witness familiar with the alleged signer's handwriting, *Wileman v. Commonwealth*, 24 Va. App. 642, 647-48 (1997), it is not *required* to do so. It is well-established that the authenticity of a signature on a document may also "be shown by direct or circumstantial evidence." *Bain v. Commonwealth*, 215 Va. 89, 91 (1974). "Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof." *Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015) (quoting *Parks*, 221 Va. at 498). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'" *Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

Here, the circumstantial evidence established that Canty signed both interim reports. On every application submitted, Canty provided the same home address, and her contact information, including the address, had not changed. While Canty testified that she moved from house to house and lived in a hotel, she admitted that her home address remained her mailing

- 5 -

address and she continued to receive her mail there. While her boyfriend had lived at the home at some point, he was in prison during the relevant time and did not have access to the home. Canty continued to receive the benefits after the reports were submitted. Further, Canty admitted that the disputed signature on the February 2019 interim report was similar to her genuine signature on the authorization form.

In addition, it is well-established that verified signatures may be compared with disputed signatures by a factfinder, without the necessity of an expert witness. *Keister v. Phillips*, 124 Va. 585, 590-91 (1919). Here, the trial court compared Canty's acknowledged signature to the February 2018 interim report and found that it was the "same."[2] Although the trial court did not make explicit factual findings regarding the signature on the second interim report, a court is not obligated to discuss its examination of every piece of evidence for the record. "Absent a statutory mandate . . . a trial court is not required to give findings of fact and conclusions of law." *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982). Indeed, we presume the court "thoroughly weighed all the evidence." *Farley v. Farley*, 9 Va. App. 326, 329 (1990).

Although Canty testified that she did not sign the interim reports, the trial court "was at liberty to discount [her] self-serving statements as little more than lying to conceal [her] guilt." *Poole v. Commonwealth*, 73 Va. App. 357, 369 (2021) (quoting *Becker v. Commonwealth*, 64 Va. App. 481, 495 (2015)). Here, Canty testified that she "thought that income meant you had money to spend and money coming in." She also claimed that she "didn't start or stop a new job" when she started back with the Southern Virginia Higher Education Center in December 2017; she

---

[2] Canty contends that the context of the trial court's ruling that the "signature is same, same information" means that the trial court merely ruled that the signatures convey the same name. But Canty's argument ignores the remaining part of that sentence. The trial court stated that "the signature is same, same information, it is checked, it went to the mailbox that you indicated that you were picking up your mail." Read in context, it is clear that the trial court concluded that both the signatures were the same and that the other information provided was the same.

just "returned to work."  The trial court was entitled to reject that testimony and infer her prevarications were made "in an effort to conceal [her] guilt." *Covil v. Commonwealth*, 268 Va. 692, 696 (2004).  Indeed, "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [factfinder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)).

Given the trial court's explicit ruling that the signature on the February 2018 interim form was the same as Canty's acknowledged signature, along with the circumstantial evidence presented at trial, the evidence was sufficient to prove that Canty signed both the February 2018 and February 2019 interim forms.

### III. CONCLUSION

For the foregoing reasons, we conclude that the Commonwealth's evidence was sufficient to sustain Canty's convictions.  Accordingly, we affirm the judgment of the trial court.

*Affirmed.*