## Richmond

James F. Stegall v. Commonwealth of Virginia.

April 22, 1968.

Record No. 6735.

Present, All the Justices.

*George H. Fralin, Jr.,* for plaintiff in error.

*Charles Shepherd Cox, Jr., Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error,

I'Anson, J., delivered the opinion of the court,

Defendant, James S. Stegall, was indicted for unlawfully and feloniously stealing and carrying away a 1966 Chevrolet Impala automobile of the value of $3,000. Upon the request of defendant's

counsel, the attorney for the Commonwealth filed a notice with the court stating that it would rely on § 18.1-109[1], Code of 1950, as amended, 1960 Repl. Vol., in the prosecution of the case. Defendant pleaded not guilty, waived trial by jury, was found guilty as charged in the indictment, and was sentenced to two years in the State penitentiary. We granted defendant a writ of error.

The defendant contends that the evidence was insufficient to support the conviction, and that the Corporation Court of the City of Lynchburg lacked venue to try the case.

The Commonwealth's evidence shows that on the night of December 18, 1965, defendant and a companion went to the Thomas & Stephens Gulf Station in the city of Lynchburg, Virginia, agent for Avis Rent-A-Car Company, to rent an automobile. Defendant made a deposit of $25 and signed a contract in which he agreed to rent the car for two days and to return it to the Thomas & Stephens Gulf Station on or before the expiration of the rental period. The car was not returned in accordance with the rental agreement and it was later found abandoned in Nashville, Tennessee.

It appears from the record that defendant was arrested in the State of Michigan about seven months after the alleged offense was committed.

Defendant testified that he was employed by Jerome Kay and that they were in Lynchburg working on a show promotion project. He rented the Avis car at Kay's request and Kay furnished the deposit money for the rental. Defendant signed the rental contract and drove the car away from the rental station. After first going by their hotel room, defendant and Kay drove over to Roanoke around 8:30 that night. Defendant first testified that he got out of the car in Roanoke and has not seen it since. Later he said that after eating at "some little restaurant" in Roanoke he granted Kay permission to use the car for a few minutes. When Kay did not return within a reasonable time with the car he decided to hitchhike back to Lynchburg. He spent

---

1. § 18.1-109. "If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be deemed guilty of larceny thereof, and may be indicted as for simple larceny. But proof of embezzlement under this section shall be sufficient to sustain the charge. On the trial of every indictment for larceny, however, the defendant, if he demands it, shall be entitled to a statement in writing from the attorney for the Commonwealth of what statute he intends to rely upon to ask for conviction."

the night at his hotel and the next morning, December 19, 1967, he checked out and left the State. He has not seen or heard from Kay since he last saw him in Roanoke. When he left Lynchburg, Kay's belongings were still in his hotel room.

Defendant said that he did not think anything was wrong when Kay failed to return to the restaurant to pick him up. He did not report to the Avis agent what had happened to the car because it did not have to be returned until the following day and he was sure Kay would return it in accordance with the terms of the rental agreement.

Defendant first contends that the evidence was insufficient to support his conviction. He argues that his uncontradicted testimony explaining why he did not return the leased automobile to its rightful owner shows that he did not wrongfully and fraudulently convert the automobile to his own use, and that his testimony should have been accepted by the trial court.

When the sufficiency of the evidence is assailed, it is our duty to look to the evidence which tends to support the judgment of the trial court and permit it to stand unless it is plainly wrong. *Snyder* v. *Commonwealth*, 202 Va. 1009, 1016, 121 S. E. 2d 452, 457 (1961); *Ingram* v. *Commonwealth*, 192 Va. 794, 803, 66 S. E. 2d 846, 850 (1951). The judgment of a trial judge based on evidence heard ore tenus has the same weight as the verdict of a jury. *Pierce* v. *Commonwealth*, 205 Va. 528, 534, 138 S. E. 2d 28, 31 (1964); 1B Mich. Jur., Appeal and Error, §§ 278-280, pp. 406-414.

[1] The precise legal question presented here as to whether the failure of one hiring a motor vehicle to return it as agreed constitutes embezzlement under Code § 18.1-109 has not been before this court for decision. In other jurisdictions, however, the courts have held that if one rents an automobile which he agrees to return to its lawful owner pursuant to the terms of the rental agreement and later forms an intent to convert it to his own use, he is guilty of embezzlement. *Chapman* v. *State*, 90 Okla. Crim. 224, 212 P. 2d 485 (1949); *State* v. *Russell*, 265 S. W. 2d 379, 45 A.L.R. 2d 617, 620, 621 (Mo. 1954); Annot., "Embezzlement—Hired Vehicle," 45 A.L.R. 2d 623.

In 29A C.J.S., Embezzlement, § 11, pp. 27, 28, it is said:

"The mere failure to return property or account for a trust fund, while evidence of a conversion, does not necessarily constitute embezzlement, *but failure to perform an absolute duty to return the property* or refusal to account or pay over on demand *consti-*

*tutes embezzlement, or is, at least, evidence from which a fraudulent conversion may be inferred.*

*"There is no settled mode by which a fraudulent conversion or appropriaton must take place, and the means by which it is accomplished are immaterial. It may be effected by any exercise of the right of ownership inconsistent with the owner's rights, and with the nature and purposes of the trust."* (Italics supplied.)

Ordinarily, uncontradicted evidence should be accepted as true and cannot be wholly discredited or disregarded if not opposed to probabilities, even though the witness is an interested party. Uncontradicted evidence is not, however, necessarily binding on the court or the jury. It may be disbelieved where it is inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, especially where the witness is a party or is interested. Neither courts nor juries are required to believe that which they know from ordinary experience is incredible. *Belton* v. *Commonwealth*, 200 Va. 5, 9, 104 S. E. 2d 1, 4 (1958); *Blankenship* v. *Commonwealth*, 193 Va. 587, 593, 70 S. E. 2d 335, 338 (1952); 7 Mich. Jur., Evidence, § 278, pp. 665, 666, and the numerous cases there cited.

Here defendant came into lawful possession of the automobile through a rental agreement, and under its terms he had an absolute duty to return it to the Thomas & Stephens Gulf Station at a stipulated time. He failed to return the automobile entrusted to him and gave no explanation of what had happened to it until sometime after his arrest.

[2] The trial judge was of the opinion that defendant's explanation as to what had happened to the car and why he did not notify the rental agency was incredible.

In *Bradley* v. *Commonwealth*, 196 Va. 1126, at 1136, 86 S. E. 2d 828, at 834, we said:

"In testing the credibility and weight to be ascribed to the evidence, we must give trial courts and juries the wide discretion to which a living record, as distinguished from a printed record, logically entitles them. The living record contains many guide posts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them."

The trial judge saw, heard and observed the demeanor of the de-

fendant while testifying, and we cannot say that he should have accepted defendant's testimony. Defendant's explanation of why he did not return the automobile was not plausible, and from all the circumstances here a reasonable man could not be expected to believe it. Defendant was not bothered by Kay's failure to return to the restaurant in Roanoke to take him back to Lynchburg. He showed no concern about what had happened to his employer or the automobile. He left Lynchburg on the morning of the 19th without knowing Kay's whereabouts and without telling the rental agent what had happened to the car. His actions and conduct were not what could be expected of an ordinary person.

The failure of defendant to return the vehicle, coupled with the surrounding circumstances, furnishes sufficient evidence from which the trial court could conclude that the defendant, after lawfully coming into possession of the automobile, did form an intent to wrongfully and fraudulently convert it to his own use. The requisite intent to commit the offense is inferred from all the facts and circumstances of the case. See *Page v. Commonwealth*, 148 Va. 733, 741, 742, 138 S. E. 510, 512 (1927); *Shinn v. Commonwealth*, 73 Va. 899, 909 (1879).

[3] Lastly, defendant argues that the Corporation Court of the City of Lynchburg did not have venue to try his case.

Section 19.1-220, Code of 1950, as amended, 1960 Repl. Vol., provides in part that, "if any person shall commit embezzlement within this State he shall be liable to prosecution and punishment for his offense in the county or city in which the offense occurred or in the county or city in which he was legally obligated to deliver the embezzled funds or property."

The rental agreement provided that the car was to be returned to the Thomas & Stephens Gulf Station in the city of Lynchburg at a specified time, and defendant was legally obligated to comply with its terms. Hence the Corporation Court of the City of Lynchburg did have venue to try the case.

For the reasons stated, the judgment of the trial court is

*Affirmed.*