**Salem**

KATHY ANN MOLASH, et al.

v.

COMMONWEALTH OF VIRGINIA

No. 0763-85

Decided October 7, 1986

COUNSEL

David A. Melesco, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

MOON, J. — Chester David Molash and Kathy Ann Molash were convicted of larceny in violation of Code § 18.2-117 for failure to return bailed property. The Molashes were long distance truck drivers employed by Mr. and Mrs. Joel Markham of Franklin County, Virginia, to haul freight. Before completing a trip between Chicago and Newton, North Carolina, the Molashes abandoned the tractor and trailer provided to them. On this appeal, they contend that the evidence was insufficient to prove the element of criminal intent which is necessary to be found guilty of larceny. We agree and reverse.

Code § 18.2-117 provides:

> If any person comes into the possession as bailee of any . . . vehicle . . . and fail[s] to return the same to the bailor, in accordance with the bailment agreement, he shall be deemed guilty of larceny thereof . . . . The failure to return to the bailor such . . . vehicle . . . within *five* days from the time the bailee *has agreed in writing* to return the same shall be prima facie evidence of larceny by such bailee of such . . . vehicle.

(emphasis added). A trailer is by definition a "vehicle." *See* Code § 46.1-1(34).

Since there was no written agreement between the Markhams and Molashes and the bailors of the property had taken possession of it within two days of its abandonment by the Molashes, that portion of the statute establishing a prima facie case is not applicable. We must, therefore, consider all of the facts and circumstances to determine if there was a violation of the statute.

The Molashes were convicted of the larceny of only the trailer, owned by Ryder Rental Company (Ryder) and leased to B & L Truck Lines, Inc. (B & L) of Roanoke. B & L, in turn, had contracted with the Markhams to haul freight with one of the Markhams' tractors. The Markhams were to receive a percentage of the revenues which B & L received from the shipment.

There is virtually no other evidence in the record concerning the Molashes' agreement with the Markhams. Particularly, there was no verbal understanding as to where the trailer would be returned at the end of the employment contract.

On November 19, 1984, the Markhams provided a tractor to the Molashes and instructed them to pick up one of B & L's trailers in Covington, Virginia and transport a load of freight to Chicago. The Molashes had been instructed that, after they completed the delivery to Chicago, they were to go to a nearby location to pick up another shipment. However, upon arriving in Chicago, there was no load waiting for them at the second location. The Molashes called B & L's agent, Tom Waters, who gave them a number to call to get another shipment. They picked up that load and started toward Newton, North Carolina.

En route to North Carolina, they decided to visit Mr. Molash's brother in Vine Grove, Kentucky for Thanksgiving. On November 22, 1984, when they were approximately thirty-five miles from the brother's home, they left the trailer at a truck stop in Indiana because "[t]here was no place to park it" at the brother's house. On November 23, 1984, the Markhams, who had not heard from the Molashes, telephoned them at Mr. Molash's brother's residence. Mrs. Markham testified that Mr. Molash told her that he did not know where the tractor and trailer were. He indicated that it might be in either Kentucky or Indiana. Mrs. Markham testified: "They more or less said, 'You find it.' I am not saying that is what they said, but that is what I assume they were saying." Mrs. Markham only talked to Mr. Molash. As part of the same phone

conversation or one later in the day (he could not remember at trial), Mr. Markham testified that he learned the location of the tractor and trailer from Mr. Molash's brother. A few hours later, a Virginia state trooper telephoned Mr. Molash's brother and learned the exact location of the tractor and trailer. The trooper contacted local authorities who located the tractor and trailer where the brother had indicated.

The Molashes contend that there was no evidence establishing any obligation on their part to continue working for the Markhams for any particular length of time. They argue that there was no agreement which prevented them from quitting at any time and leaving the tractor and trailer where they were. They testified that when they first decided to quit, they did not call the Markhams because the Markhams were also truck drivers and the Molashes thought the Markhams were on the road. Therefore, the Molashes explained that they called B & L, the lessor of the trailer, and told its agent that they had quit. They also stated that they told B & L that its trailer was at the truck stop in Indiana, informed it of the truck stop number and exit number, and stated that the tractor was going to be left at the K-Mart parking lot in Radcliff, Kentucky, less than thirty miles from the trailer. This testimony was not contradicted by any other witness.

█ The trial court did not find that the Molashes had converted the property or were guilty of fraudulent intent, but, instead, applied a literal interpretation to Code § 18.2-117 and required the Commonwealth to prove only that the Molashes, as bailees, failed to return the bailed property to the bailor. However, the Supreme Court has held that Code § 18.2-117 implicitly requires proof of an element of mens rea or scienter, even though the requirement does not appear in the statute. *See Maye v. Commonwealth*, 213 Va. 48, 189 S.E.2d 350 (1972) (construing former Code § 18.1-163). The necessity of proving *fraudulent* intent was made clear in *Makarov v. Commonwealth*, 217 Va. 381, 228 S.E.2d 573 (1976), where the court, in referring to *Maye*, stated:

> There, we construed a statute specifically dealing with larceny, a crime which presupposes a *mens rea*. But here [a case making the failure to pay wages a crime] the statute on its face deals with a naked civil debt and we cannot say the

General Assembly implicitly meant to include proof of an intent to defraud as an essential element of the offense.

*Makarov*, 217 Va. at 385-86, 228 S.E.2d at 576; *see also United States v. Parker*, 522 F.2d 801 (4th Cir. 1975) (holding that the legislature intended that fraudulent intent be proven).

■ On appeal, we must consider the evidence in the light most favorable to the Commonwealth and in so doing must "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Wright v. Commonwealth*, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954). "Additionally, the credibility of witnesses and the weight to be given their testimony are questions exclusively within the province of [the fact finder]. . . ." *Barker v. Commonwealth*, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985) (citing *Coppola v. Commonwealth*, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), *cert. denied*, 444 U.S. 1103 (1980)).

■ However, here we are dealing with uncontradicted evidence. In *Stegall v. Commonwealth*, 208 Va. 719, 160 S.E.2d 566 (1968), the Supreme Court stated:

Ordinarily, uncontradicted evidence should be accepted as true and cannot be wholly discredited or disregarded if not opposed to probabilities, even though the witness is an interested party . . . . It may be disbelieved where it is inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, especially where the witness is a party.

*Id*. at 722, 160 S.E.2d at 568 (citations omitted).

The Molashes argue that there is no evidence that they converted this property to their own use or attempted to defraud the Markhams or anyone else of the trailer. They argue that they merely left it at the truck stop, told its rightful possessor, B & L, of its location, and went home to Minnesota. We find no evidence that excludes the hypothesis that the Molashes became disillusioned with their employment with the Markhams and merely left the trailer where it was when they decided to quit. The testimony that they notified B & L, the lawful possessor of the trailer, of its

location when they quit, was not contradicted by any other witness, including B & L's agent, Tom Waters, who testified at trial for the Commonwealth. Although there was a conflict in the evidence about the phone conversation between Mrs. Markham and Mr. Molash, even believing Mrs. Markham's characterization of the testimony does not, in light of the other facts, prove conversion of the trailer. The evidence, viewed in the light most favorable to the Commonwealth, does not establish any fraudulent intent on the part of the Molashes.

We hold as a matter of law that the uncontradicted material testimony of the Molashes was not inherently incredible. Therefore, the Commonwealth's evidence did not exclude every reasonable hypothesis of innocence. Since we reverse for this reason, other issues raised on this appeal need not be addressed.

The judgment is reversed and dismissed.

*Reversed and dismissed.*

Koontz, C.J., and Coleman, J., concurred.