COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Coleman and Bumgardner
Argued at Salem, Virginia


RICHARD IRVIN HUDDLESTON

v.    Record No. 2335-98-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE SAM W. COLEMAN III
OCTOBER 19, 1999

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
George E. Honts, III, Judge

Wayne D. Inge for appellant.

Linwood T. Wells, Jr., Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Richard Huddleston was convicted in a bench trial of petit
larceny in violation of Code § 18.2-96. On appeal, Huddleston
argues the evidence is insufficient to prove he intended to
permanently deprive the owner of his property. We agree and
reverse the conviction.

BACKGROUND

Huddleston borrowed a drill from Martin Newton to make
repairs on a trailer for a mutual friend. Newton told
Huddleston to return the drill the next morning. Several days
later when Huddleston had not returned the drill, Newton called
him. Huddleston told Newton that he would return the drill, and

---

* Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Newton told him to return it "as soon as you can." Huddleston still did not return the drill, so Newton spoke with him again and told Huddleston to return it by a certain day or he would get a warrant. Huddleston again assured Newton that he would return the drill, but again Huddleston failed to do so. When Newton last talked with Huddleston demanding that the drill be returned, work on the trailer had not begun.

Newton reported the incident to the sheriff's office. An investigator went to Huddleston the next day and advised him that Newton had reported the drill stolen. Huddleston admitted that he had the drill and when told by the investigator to return it, Huddleston said he would. When Huddleston did not return the drill within four days, the investigator obtained a grand larceny warrant for Huddleston. Before Huddleston was arrested on the warrant, Huddleston's employer contacted Newton to determine his willingness to accept payment for the missing drill. As a result, Huddleston borrowed $100 from his employer which he paid to Newton for the drill, and which Newton accepted in satisfaction of the missing drill. Thereafter, Newton called the sheriff's office and requested that the warrant be "withdrawn." He was told that could not be done. Huddleston was arrested on the warrant.

At trial, Huddleston testified that the drill had been stolen from his truck either the day before or the same day the

-

investigator had talked with him.  Huddleston had not reported the drill stolen.

## ANALYSIS

Huddleston denies that he intended permanently to deprive Newton of his property, and he argues that the circumstances do not support an inference that he so intended.  He contends the evidence fails to establish he had a larcenous intent and at most establishes a civil claim against him for failing and being unable to return bailed property.  We agree.

On review of a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998).  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).  The trial court's ruling will not be disturbed on appeal "unless plainly wrong or without evidence to support it."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Where the evidence "'is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused].'"  Harrell v.

-

Commonwealth, 11 Va. App. 1, 11, 396 S.E.2d 680, 685 (1990) (quoting Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969)).  Furthermore, when a conviction is based on circumstantial evidence, the evidence "must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence."  Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984).  Although the Commonwealth is not required to disprove every remote possibility of innocence, it must disprove those theories of innocence that "flow from the evidence itself."  Black v. Commonwealth, 222 Va. 838, 841, 284 S.E.2d 608, 609 (1981) (citation omitted).

"To prove that a defendant is guilty of larceny, the Commonwealth must present evidence that the defendant took the property with the intention to deprive the owner permanently of his possession of the goods."  Welch v. Commonwealth, 15 Va. App. 518, 524, 425 S.E.2d 101, 105 (1992).  "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact."  Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991).  Where the larceny is based upon the failure to return or account for bailed property, failure to perform the duty to return the property or the "'refusal to account or pay over on demand constitutes embezzlement, or is, at least, evidence from which a fraudulent conversion may be inferred.'"  Stegall v. Commonwealth, 208 Va. 719, 721-22, 160

-

S.E.2d 566, 568 (1968) (quoting 29A C.J.S. Embezzlement § 11, at 27-28).

Two cases are instructive on the principle controlling this case. Although both cases deal with statutory embezzlement charges, rather than larceny, the crucial issue in both cases is whether the element of failing to return bailed property, and the surrounding circumstances, constitutes sufficient circumstantial evidence to prove a larcenous intent or fraudulent conversion, which is the same issue before us here. In Stegall, supra, the defendant rented an automobile through a written agreement from a Virginia agency wherein he agreed to return the automobile two days later. Stegall did not return the vehicle. It was later found abandoned in Nashville, Tennessee. Stegall was arrested approximately seven months later in Michigan. At trial his explanation was that he had rented the car in Lynchburg for his employer, who had provided the rental deposit. After going to their hotel room, Stegall and his employer went to a Roanoke restaurant for dinner. The employer took the car for "a few minutes," and when he did not return in a reasonable time, Stegall hitchhiked back to Lynchburg. When the employer had not returned the next morning, Stegall testified that he checked out of the hotel and left the state and that he had not seen the employer since.

In holding that the failure to return the vehicle, "coupled with the surrounding circumstances," constituted sufficient

-

evidence for the fact finder to conclude that Stegall had formed an intent to wrongfully convert the automobile to his own use, the Court held that Stegall's explanation of why he did not return the vehicle was not plausible and a reasonable man could not be expected to believe it.  See id. at 723, 160 S.E.2d at 569.  The Court noted that

> [o]rdinarily, uncontradicted evidence should be accepted as true and cannot be wholly discredited or disregarded if not opposed to probabilities, even though the witness is an interested party.  Uncontradicted evidence is not, however, necessarily binding on the court or the jury.  It may be disbelieved where it is inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, especially where the witness is a party or is interested.  Neither courts nor juries are required to believe that which they know from ordinary experience is incredible.

Id. at 722, 160 S.E.2d at 568 (citations omitted).

Because the trial judge was entitled to disregard Stegall's account of what occurred "as inherently improbable" and because his failure to return the vehicle, "when coupled with the surrounding circumstances," supports the inference that Stegall intended to permanently deprive the owner of possession of the vehicle, the evidence was sufficient to prove the specific intent as an element of the offense.

In Molash v. Commonwealth, 3 Va. App. 243, 348 S.E.2d 868 (1986), we held that the defendants' failure to return bailed property, under the surrounding circumstances of that case,

-

failed to prove that the defendants intended permanently to deprive the owners of the possession of their vehicle. In Molash, the explanation of why the bailed vehicle was not returned was uncontradicted, was not inherently incredible, was not internally inconsistent, and proved that the intent was not criminal.

The Molashes were long distance truck drivers who were employed on occasion by the Markhams to haul freight. No written contract of employment existed and apparently no term of employment was stated. At the Markhams' direction, the Molashes were to drive one of the Markhams' tractors to haul a trailer of freight owned by B & L Truck Lines, Inc. from Covington, Virginia to Chicago and then to pick up a return load of freight. When the Molashes arrived in Chicago, no return load was waiting. The Molashes called B & L's agent who gave them a telephone number to call in order to obtain a return shipment, which they did. They were able to secure another load to be returned to North Carolina. On the return trip, the Molashes visited a relative in Kentucky for Thanksgiving. While there, they decided to quit the job. According to the uncontradicted testimony, the Molashes called an agent for B & L Trucking to report that they had quit and to report the exact separate locations of the tractor and trailer. At trial, the agent of B & L testified and he did not refute that testimony. Mrs. Markham testified, however, that in a telephone conversation

-

with Mr. Molash, he told her that he didn't know where the tractor and trailer were located.

In finding the evidence insufficient in <u>Molash</u> to prove a fraudulent intent or intent to permanently deprive the owners of possession of their property, despite the testimony of Mrs. Markham, we held the uncontradicted material evidence of the Molashes was not implausible or inherently incredible and could not be disregarded.  <u>See</u> <u>id.</u> at 248, 348 S.E.2d at 871.  The uncontradicted material evidence proved that after the Molashes quit as truck drivers, they informed B & L Trucking's agent of the location of the tractor and trailer.  Therefore, that evidence disproved that the Molashes intended to deprive the owners of possession of their property.  Thus, the Commonwealth's evidence failed to exclude every reasonable hypothesis of innocence.  In reaching that result in <u>Molash</u>, we reiterated and applied the principle from <u>Stegall</u> that

> "[o]rdinarily, uncontradicted evidence should be accepted as true and cannot be wholly discredited or disregarded if not opposed to probabilities, even though the witness is an interested party. . . .  It may be disbelieved where it is inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, especially where the witness is a party."

<u>Id.</u> at 247, 348 S.E.2d at 871 (quoting <u>Stegall</u>, 208 Va. at 722, 160 S.E.2d at 568).

-

Here, viewing the evidence in the light most favorable to the Commonwealth, it proved that Huddleston borrowed the drill from Newton in order to do repairs on a mutual friend's trailer. No circumstances exist that would support an inference that at the time Huddleston borrowed the drill he intended not to return it or to permanently deprive Newton of his lawful possession of the drill. When Newton demanded return of the drill, Huddleston never denied that he had the drill and repeatedly promised to return it. When contacted by the sheriff, Huddleston acknowledged that he had Newton's drill and again promised to return it. When confronted with a criminal warrant, Huddleston acknowledged that he had had Newton's drill, but stated that it apparently had been stolen from his truck and he was unable to return it. Huddleston never denied that he had the drill or that he was required to return or account for it to Newton. Huddleston arranged to borrow money from his employer and paid Newton $100 for the drill. Newton accepted the money in satisfaction of the drill and asked that the warrant be withdrawn.

The uncontradicted credible evidence of the Commonwealth in this case is as equally compelling as the evidence in Molash in establishing the lack of a fraudulent or criminal intent. The evidence shows that Huddleston borrowed Newton's drill; at all times Huddleston acknowledged that Newton was entitled to possession and that he intended to return it to Newton; and when

-

Huddleston was unable to do so, he accounted for the drill by paying Newton for it.  Although Huddleston apparently did not tell the officers that the drill had been stolen or was missing from his truck, Huddleston's testimony that he was unable to return the drill because it was stolen or missing was uncontradicted, it was not inherently incredible or internally inconsistent, and could not be disbelieved.  Accordingly, because the Commonwealth's evidence did not exclude every reasonable hypothesis of innocence, the evidence is insufficient to support the conviction.  Thus, we reverse the conviction and dismiss the indictment.

<u>Reversed and dismissed.</u>