COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, Alston and Huff
Argued at Chesapeake, Virginia


DARCELLA REED

v.      Record No. 1280-12-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
AUGUST 6, 2013


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Westbrook J. Parker, Judge Designate

Jennifer L. Titter, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


The trial court convicted Darcella Reed (appellant) of failing to return bailed property, in

violation of Code § 18.2-117.  On appeal, appellant challenges the sufficiency of the evidence

supporting this conviction, which arose from appellant's continued and unauthorized use after

May 24, 2011 of a vehicle that she rented from Triangle Rental Car (Triangle).  For the

following reasons, we affirm the conviction.

I. BACKGROUND

"On appeal, we consider 'the evidence in the light most favorable to the Commonwealth,

as we must since it was the prevailing party' in the trial court."  Landeck v. Commonwealth, 59

Va. App. 744, 748, 722 S.E.2d 643, 645 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

330, 601 S.E.2d 555, 574 (2004)).

On May 2, 2011, appellant rented a vehicle from a Triangle branch office located in the

City of Chesapeake.  It is undisputed that appellant initially rented the vehicle for a one-day

period – i.e., the vehicle was originally due back to Triangle on May 3, 2011 – and that the rental contract was then verbally extended during telephone conversations that occurred between appellant and Triangle rental agents. The record does not disclose precisely how many extensions were arranged over the telephone, although it is clear that the rental period had at one point been extended to May 15, 2011.

On May 17, 2011, Bryan Black, Triangle's branch manager, sent a certified demand letter to the address appellant had provided to the Triangle rental agent when the rental contract was originally executed on May 2, 2011. Black's certified demand letter to appellant stated that the vehicle had not been returned by May 15, 2011, which Black indicated was "the return date required in your rental agreement," and it instructed appellant to return the vehicle within five days of receipt of the certified letter. Although appellant never actually read the contents of the May 17, 2011 demand letter, she did call Triangle after seeing the corresponding certified mail slip that the postal worker had left her. Black testified at trial that the deadline for appellant to return the rental vehicle was again extended over the telephone after the May 17, 2011 certified demand letter was issued to appellant.

Black testified that, according to Triangle's file, this extension of time that appellant arranged over the telephone with a Triangle rental agent "took us up to May 24th" – and that Triangle's file indicated that there were no further extensions of time after May 24, 2011.

Furthermore, Black testified that Triangle's file contained a document that had a portion of a notation that a Triangle rental agent had entered in Triangle's computer pertaining to a May 23, 2011 telephone conversation with appellant. This particular document was not offered or admitted into the evidence at appellant's trial, but Black read the partial notation from the witness stand without objection. Black testified:

> [Triangle's computer] system only shows the first little block of it, but it says, "*Customer says someone will*" – so typically when we

see that, the rest of it normally is an extension or return or something like that. It's something about the conclusion of the contract.

(Emphasis added). Thus, according to Black, the notation from the May 23, 2011 telephone conversation between appellant and the Triangle rental agent indicated that appellant (or "someone" acting on appellant's behalf) would take some action – either by extending the rental contract or by returning the rental vehicle to Triangle.

However, Black testified that appellant did not return the vehicle or communicate with Triangle in any way following that telephone conversation for more than two weeks. Moreover, while the record indicates that Triangle received four credit card payments and four cash payments from appellant, Black indicated during his testimony that no payments were received at any point after the May 23, 2011 telephone conversation occurred.

On May 26, 2011, Black sent appellant a second certified demand letter to the same address that appellant had provided when the rental contract was executed on May 2, 2011. Black wrote in the May 26, 2011 demand letter that the vehicle "was not returned on or before May 24, 2011[,] the return date required in your rental agreement, and still has not been returned as of the date of this letter." As with the earlier certified demand letter, appellant was instructed in the May 26, 2011 demand letter to return the vehicle within five days of the receipt of the letter. However, Black testified that he received the certified return receipt, bearing the notation "unable to find," two days later. The vehicle was not returned to the Triangle branch, and no further payments were received. Given that appellant had not communicated with Triangle in any way since the May 23, 2011 telephone conversation, Black testified that he reported to the police that the vehicle had been stolen and swore out a warrant for appellant's arrest on June 7, 2011.

One day later, on June 8, 2011, a man came to the Triangle branch office while Black was present. Black testified that the man said that he wanted to pay for appellant's rental vehicle. The man did not have the rental vehicle with him. Black told the man that the vehicle had been reported stolen, that he could not extend the rental contract any further, and that the vehicle needed to be returned at that time. Black testified that the man "made a few phone calls here and there, back and forth, to different people" and that a second man arrived at the Triangle branch a short time later with the rental vehicle. Black also testified that appellant spoke with him in person at some point after the rental vehicle had been returned,[1] claiming that she had asked "the first gentleman . . . to come up and extend the rental" at the Triangle branch.

Testifying in her own defense, appellant claimed that she believed that Triangle had agreed to extend the contract beyond May 24, 2011 – although she admitted that she had no documentation or telephone call reference number supporting this assertion. She also testified that, because she could not come to the Triangle branch during its business hours due to her work schedule, she gave money to her then-boyfriend (whom she identified at trial only as "Terrance"[2]) with the understanding that he would go to the Triangle branch to pay for her

---

[1] The evidence admitted at trial included the final invoice that Black prepared when the vehicle was returned on June 8, 2011. The invoice indicated that the vehicle had been driven 6,209 miles over a five-week, two-day period. The total cost of the rental was $2,506.91. In addition to the initial charge of $133.43 (representing the original one-day rental and a deposit fee), three additional charges of $83.42 had been applied to appellant's VISA card. Furthermore, prior to the return of the vehicle, Triangle received cash payments of $127, $300, $130, and $540. However, the final invoice indicated that appellant owed Triangle an outstanding balance of $1,026.22. Triangle had not received any of that balance owed by the time of appellant's trial.

[2] Terrance did not testify at trial, and no evidence established that any of the cash payments that were made on appellant's account with Triangle prior to May 24, 2011 were made by anyone other than appellant. Furthermore, appellant never testified how much money Terrance was supposed to pay Triangle on May 24, 2011 or any date thereafter. Black testified that he "was told [by appellant] that the first gentleman [who arrived at the Triangle branch] had her money to do the extension" for the rental vehicle on June 8, 2011. However, nothing in the record indicates how much money the "first gentleman" intended to pay Triangle at that time, whether this amount would have been sufficient to extend the rental contract (even if, of course,

- 4 -

continued use of the rental vehicle. Appellant testified that she was unaware that payments were not being made to Triangle, that she never received notice of the May 26, 2011 certified demand letter, and that she believed "everything was fine" until she learned that the car had been reported as being stolen and that a warrant had been issued for her arrest.

Rejecting the assertion by appellant's counsel that appellant lacked fraudulent intent, the trial court convicted appellant under Code § 18.2-117, explaining that "the Commonwealth has met its burden as to the requirements and the statute."

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

---

the vehicle had not already been reported as stolen), or whether this "first gentleman" was even Terrance. Appellant also testified that, after she learned that Terrance had not paid Triangle with the money she gave him, she was assaulted by Terrance after she tried to reclaim that money. She testified that Terrance had been charged in another locality with assault and battery, and her counsel stated at appellant's sentencing hearing that Terrance had been convicted of that offense. However, the record contains no evidence corroborating these claims – and the trial court found that appellant's testimony on this subject was not "relative to the terms" of the offense of failing to return bailed property.

evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

A. THE APPROPRIATE INTENT ELEMENT UNDER CODE § 18.2-117

Appellant's assignment of error alleges that the trial court erred in finding her guilty under Code § 18.2-117[3] "because the evidence was insufficient to prove that [appellant] *had the intent to never return the vehicle*, but rather had thought that the rental [vehicle] had been paid for." (Emphasis added). On brief, the Attorney General contends that appellant's assignment of error is based on an incorrect premise – to the extent that it asserts that the evidence failed to prove that she "had the intent to never return the vehicle." We agree with the Attorney General's contention, given that this Court's decision in Ketchum v. Commonwealth, 12 Va. App. 258, 403 S.E.2d 382 (1991), is controlling on the issue.

In Ketchum, this Court expressly held that "proof of intent to permanently deprive the owner of his or her property is not required to sustain a conviction under Code § 18.2-117." Id. at 261, 403 S.E.2d at 383; see also Evans v. Commonwealth, 226 Va. 292, 297, 308 S.E.2d 126, 129 (1983) (holding that the intent to permanently deprive the owner of his or her property is not an element of embezzlement under Code § 18.2-111). Citing the Supreme Court's opinion in Maye v. Commonwealth, 213 Va. 48, 189 S.E.2d 350 (1972), this Court explained in Ketchum

---

[3] Code § 18.2-117 states:

> If any person comes into the possession as bailee of any animal, aircraft, vehicle, boat or vessel, and *fail to return* the same to the bailor, *in accordance with the bailment agreement, he shall be deemed guilty of larceny thereof* and receive the same punishment, according to the value of the thing stolen, prescribed for the punishment of the larceny of goods and chattels. The failure to return to the bailor such animal, aircraft, vehicle, boat or vessel, within five days from the time the bailee has agreed in writing to return the same shall be *prima facie* evidence of larceny by such bailee of such animal, aircraft, vehicle, boat or vessel.

(Emphasis added).

that "Code § 18.2-117 does not codify the common law crime of larceny but rather creates a statutory offense for failing to return the property in accordance with the terms of the [rental] agreement." Ketchum, 12 Va. App. at 262, 403 S.E.2d at 384; see also Commonwealth v. Hensley, 7 Va. App. 468, 471, 375 S.E.2d 182, 183 (1988) (same). "[B]ecause Code § 18.2-117 is a statutory, not a common law crime," proof of the defendant's intent to permanently deprive the owner of the bailed property (or proof of the defendant's intent "to never return" the bailed property) simply is not a required element under that statute. Ketchum, 12 Va. App. at 262, 403 S.E.2d at 384.

In fact, the plain language of Code § 18.2-117 does not reflect that this offense requires *any* intent at all on the defendant's part. See United States v. Parker, 522 F.2d 801, 803 (4th Cir. 1975) ("Nowhere in that statute, however, is there an explicit requirement of criminal intent."); see also Ketchum, 12 Va. App. at 262, 403 S.E.2d at 384 (explaining that the text of Code § 18.2-117 "imposes an absolute duty on [the defendant] to return the rental car to its owner at the time and place stipulated by the rental agreement"). "However, the Supreme Court has held that Code § 18.2-117 implicitly requires proof of an element of *mens rea* or *scienter*, even though the requirement does not appear in the statute." Molash v. Commonwealth, 3 Va. App. 243, 246, 348 S.E.2d 868, 870 (1986). In prior decisions interpreting and applying Code § 18.2-117, this Court has observed that "[t]he necessity of proving *fraudulent* intent" has been "made clear" by the Supreme Court.[4] Id. (emphasis in original); see also Ketchum, 12 Va. App.

_____

[4] The Supreme Court in Maye addressed an assertion that the statute now codified as Code § 18.2-117 was unconstitutional and that "the failure of the statute to require *mens rea* or *scienter* [was] fatal." Maye, 213 Va. at 49, 189 S.E.2d at 351. The Supreme Court rejected this argument, holding that "such requirement will be read into the statute by the court when it appears the legislature implicitly intended that it must be proved." Id. Interpreting its holding in Maye, the Supreme Court later indicated that "proof of an intent to defraud" is "an essential element of the offense" codified in Code § 18.2-117. Makarov v. Commonwealth, 217 Va. 381, 385-86, 228 S.E.2d 573, 576 (1976).

at 262, 403 S.E.2d at 384 (holding that "[i]t was not error for the trial court to instruct as to fraudulent intent" at a trial where the defendant was prosecuted under Code § 18.2-117).

On brief, the Attorney General does not dispute that a violation of Code § 18.2-117 "implicitly requires fraudulent intent" under binding case law interpreting that statute. Accordingly, we now address appellant's argument that the evidence failed to prove the required fraudulent intent.

B.  FRAUDULENT INTENT PROVEN HERE

A person acts with fraudulent intent when that person acts "with an evil intent, or with the specific intent to deceive or trick." Burrell v. Commonwealth, 50 Va. App. 72, 86, 646 S.E.2d 35, 42 (2007). Such intent "may, and often must, be inferred from the facts and circumstances in a particular case," Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979), including "the conduct and representations of the defendant," Norman v. Commonwealth, 2 Va. App. 518, 519, 346 S.E.2d 44, 45 (1986). The question of intent typically rests with the finder of fact. Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).

"The Commonwealth always has the burden of proving the culpable state of mind, 'and this burden never shifts.'" Walshaw v. Commonwealth, 44 Va. App. 103, 118, 603 S.E.2d 633, 640 (2004) (quoting Hodge v. Commonwealth, 217 Va. 338, 342, 228 S.E.2d 692, 695 (1976)). However, "the Due Process Clause does not prohibit the use of a permissive inference as a procedural device that shifts to a defendant the burden of producing some evidence contesting a fact that may otherwise be inferred, provided that the prosecution retains the ultimate burden of proof beyond a reasonable doubt." Dobson v. Commonwealth, 260 Va. 71, 74-75, 531 S.E.2d 569, 571 (2000). Consistent with these principles, Code § 18.2-117 states, in pertinent part:

> *The failure to return* to the bailor such animal, aircraft, vehicle, boat or vessel, *within five days* from the time the bailee has agreed

- 8 -

in writing to return the same shall be *prima facie* evidence of larceny by such bailee of such animal, aircraft, vehicle, boat or vessel.

(Emphasis added). Therefore, this Court held in <u>Ketchum</u>, 12 Va. App. at 262, 403 S.E.2d at 384, "Failure to abide by the terms of the written agreement within five days of the due date creates a *prima facie* case of fraudulent intent."

In this case, appellant does not dispute that the Commonwealth's evidence established the permissive inference of fraudulent intent afforded under Code § 18.2-117 based on her failure to return the vehicle within five days of May 24, 2011.[5] Instead, she contends that her testimony at trial served to rebut the "*prima facie* evidence" established under that statute.[6] At trial, appellant claimed that she believed that she and the Triangle branch had an arrangement that she could continue using the rental vehicle as long as she paid for the vehicle. She also claimed that she had given money to her then-boyfriend for the purpose of paying Triangle for the continued use

---

[5] Under the original terms of the rental contract, appellant was required to return the vehicle to Triangle one day after she rented it – on May 3, 2011. Triangle, in its discretion, then permitted appellant to extend the contract verbally during telephone conversations with its rental agents. However, Black testified without objection that Triangle's file indicated that the final extension of time expired on May 24, 2011. Furthermore, the record contains Black's second certified demand letter, which was mailed to appellant's address of record on May 26, 2011. That letter specifically states, "[T]he vehicle that you rented was not returned on or before *May 24, 2011*[,] *the return date required in your rental agreement*, and still has not been returned as of the date of this letter." (Emphasis added). It is undisputed that the rental vehicle was not returned until June 8, 2011 – far more than five days after the vehicle was supposed to be returned. Furthermore, while appellant testified that she was unaware of the May 26, 2011 certified demand letter, we observe that the defendant's knowledge of a certified demand letter is not necessary for establishing *prima facie* evidence under the plain language of Code § 18.2-117 – which does not even require the owner of the bailed property to send a demand letter at all. Thus, appellant concedes on brief that the circumstances here "creat[ed] the *prima faci[e]* evidence" that the factfinder is permitted to infer under Code § 18.2-117.

[6] Given appellant's concession that the Commonwealth established a *prima facie* case under Code § 18.2-117, her reliance on this Court's decision in <u>Molash</u> is misplaced. As this Court explained in <u>Molash</u>, the "portion of the statute establishing a *prima facie* case [was] not applicable" there because the Commonwealth in that case failed to establish the existence of an agreement actually specifying when the defendants were required to return their employer's vehicle. <u>Molash</u>, 3 Va. App. at 244, 348 S.E.2d at 869.

of the rental vehicle. She testified that she thought that her then-boyfriend was actually paying Triangle with this money and that she was entitled to keep using the vehicle after May 24, 2011.[7]

While appellant acknowledges that the evidence is viewed in the light most favorable to the Commonwealth (as the prevailing party below), appellant argues on brief that her testimony at trial "should be taken as accurate since the logical flow of the [Commonwealth's] evidence does not contradict [or] discredit her statements." However, appellant essentially asks this Court to substitute its own judgment for that of the factfinder – which an appellate court simply should not and cannot do. Hamilton v. Commonwealth, 279 Va. 94, 105, 688 S.E.2d 168, 175 (2010).

Under settled principles, "[t]he fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998). Furthermore, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal h[er] guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

In Sullivan v. Commonwealth, 280 Va. 672, 701 S.E.2d 61 (2010), the Supreme Court addressed the deference that is appropriately reserved for the factfinder, explaining:

---

[7] Specifically, appellant testified on direct examination:

> Q: So on May the 24th, what was your impression of everything that was supposed to happen [on that date]?
>
> A: Just to give them money, and I was just still to keep the car because I had already talked to somebody the day prior letting them know that I was going to keep the car.
>
> Q: All right. All right. Now, between May the 24th and June the 8th, did you hear anything from the Triangle Rent-A-Car Center?
>
> A: I didn't hear anything. They called me while I was at work that night or evening night, and everything was fine.

- 10 -

> Appellate courts defer to the findings of fact made by a jury or a trial judge at a bench trial if there is evidence to support them and will not set a judgment aside unless it appears from the evidence that the judgment is plainly wrong. Code § 8.01-680. That deference applies not only to findings of fact, but *also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved.*

Id. at 676, 701 S.E.2d at 63-64 (emphasis added).

In this case, while there is no dispute that appellant's rental contract was verbally extended during telephone conversations that occurred between appellant and Triangle rental agents prior to May 24, 2011, the evidence established that these extensions were not open-ended or unconditional. Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, this course of conduct between appellant and Triangle required appellant to *communicate* with Triangle to arrange for a later return date – and, of course, to pay Triangle for her continued use of the rental vehicle. Thus, the trial court certainly was not required to accept appellant's testimony that she believed that Triangle permitted her just "to keep the car" after May 24, 2011 – without actually talking to a Triangle rental agent on the telephone and obtaining further extensions of the rental contract (as she had done prior to May 24, 2011). In other words, contrary to the assertion made in appellant's assignment of error, the trial court was not required to find that appellant "had thought that the rental [vehicle] had been paid for."

In support of this conclusion, a rational factfinder could reasonably infer appellant's intent from the evidence of how differently appellant communicated with Triangle through May 23, 2011 – as opposed to after that date. We observe from the record several instances of communication between appellant and Triangle from May 2, 2011 (when the vehicle was rented) until May 23, 2011 (when appellant's last telephone conversation with a Triangle rental agent occurred). During that period of time, appellant rented the vehicle, arranged with Triangle for at

least two extensions of the rental period (first to May 15, 2011 and then to May 24, 2011), and made several credit card and cash payments for the vehicle. By contrast, from May 24, 2011 (when the vehicle was ultimately required to be returned) until June 8, 2011 (when the vehicle was finally returned), the record reflects only radio silence. During that period of time, the record indicates that appellant never contacted Triangle at all. In addition, the second certified demand letter was returned to Triangle because appellant was unable to be found. Furthermore, no payments for the rental vehicle were received by Triangle.

Thus, the trial court was able to infer that appellant's complete lack of *any* communication with Triangle between May 24, 2011 and June 8, 2011 was consistent with the permissive inference of appellant's fraudulent intent – which was already established by appellant's failure to return the vehicle within five days of its final due date to be returned of May 24, 2011. See Ketchum, 12 Va. App. at 262, 403 S.E.2d at 384. Therefore, on this record, a rational factfinder could conclude that appellant failed to return bailed property, in violation of Code § 18.2-117.

## III. CONCLUSION

Appellant does not contest that the Commonwealth established "*prima facie* evidence" in this case under Code § 18.2-117, given that she did not return the rental vehicle within five days of May 24, 2011. Viewing the evidence in the light most favorable to the Commonwealth (as we must since it prevailed below), a rational factfinder could conclude that appellant failed to rebut the permissive inference of fraudulent intent that is afforded under that statute. A rational factfinder could also conclude that the Commonwealth satisfied its ultimate burden of proving appellant's guilt beyond a reasonable doubt. Accordingly, for the foregoing reasons, we affirm appellant's conviction for failing to return bailed property under Code § 18.2-117.

Affirmed.