UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia


JOSHUA DOUGLAS RHODES

MEMORANDUM OPINION* BY
v.        Record No. 1196-21-3        JUDGE FRANK K. FRIEDMAN
OCTOBER 11, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

John S. Koehler (The Law Office of James Steele, PLLC, on briefs),
for appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Joshua Douglas Rhodes appeals his three convictions under Code § 54.1-2409.1 for

continuing to practice chiropractic medicine with a suspended license and one conviction under

Code § 18.2-178 for accepting payment arising from patients he treated while his license was

suspended.  He argues the evidence was not sufficient to convict him on these charges because

he relied on advice from counsel, and therefore did not "willfully" practice with a suspended

license.  For the following reasons, we affirm the convictions.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  This "prism requires us to 'discard the evidence of the accused in conflict with that of

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

Rhodes was first licensed to practice chiropractic medicine in Virginia in November 2012. Over the following six-year period, Rhodes was involved in several non-medical incidents that ultimately resulted in complaints about Rhodes to the Virginia Department of Health Professions, of which the Virginia Board of Medicine is a part. In May 2018 the Department of Health Professions informed Rhodes he was the subject of professional complaints and there would be an informal conference on the matter. At the time, his ability to practice was not affected by this information. Following the informal conference, the Department of Health Professions advised Rhodes it was progressing to an administrative hearing before the Board of Medicine. The Board of Medicine held the hearing on October 19, 2018. Rhodes was represented by an attorney, Silverman, at this time.

On October 31, 2018, the Board entered an order suspending Rhodes' license to practice until he entered a contract with the Virginia Health Practitioner's Monitoring Program (HPMP). The order stated, in relevant part:

1. The license of Joshua Douglas Rhodes, D.C., to practice chiropractic is SUSPENDED.

2. The suspension shall be STAYED upon proof of Dr. Rhodes' entry into a Contract with [HPMP] within thirty (30) days of the entry of this Order.

Rhodes, however, continued treating patients immediately after the order was issued. There is no dispute he treated patients between November 1, 2018, and December 4, 2018. Rhodes asserts that his counsel, Silverman, advised him that he could continue to treat patients

following this order so long as he was attempting to enter into a contract with HPMP; Rhodes' only evidence in support of this contention was his own testimony. Silverman did not testify.

On November 30, 2018, Rhodes did enter into an agreement with HPMP and the Board of Medicine was notified of the agreement. The Board sent a letter to Rhodes on December 5, 2018, advising him that the suspension of his license had been lifted "effective this date."

Rhodes fell out of compliance with the HPMP shortly after, on January 11, 2019, because of his failure to comply with mandatory professional assessment. The Department of Health Professions began another investigation into Rhodes around this time, and medical records turned over in this investigation revealed Rhodes had continued to treat patients following the October suspension order and during the suspension period. Initially, Rhodes told a Department of Health Professions investigator looking into the matter that he "had not seen patients since he signed his Board order in October of 2018." Subsequently Rhodes acknowledged that he had, in fact, treated patients between November 1, 2018, and December 4, 2018.

Rhodes was indicted for "willfully, unlawfully, and feloniously" practicing medicine between November 1, 2018, and January 17, 2019. The circuit court later struck evidence with respect to claims of treatment after December 4, 2018, finding that the license suspension was stayed at that time. The sole issue during the bench trial was whether Rhodes had "willfully" treated patients during the period of November 1 to December 4, 2018. He was found guilty on three felony charges of practicing a health profession with a suspended license and one misdemeanor count of obtaining money by false pretenses.

Rhodes testified at trial that he did not think he had restrictions on his license to practice after the October 31 hearing. The trial judge specifically found Rhodes' testimony "incredible." The court stated that "this notion that you just didn't think you had any restriction on a license to practice is almost farcical."

Rhodes moved for reconsideration, which the circuit court denied during the sentencing hearing. Rhodes appealed, asserting:

> 1. The circuit court erred in finding that the evidence established beyond a reasonable doubt that Rhodes knowingly and willfully violated Code § 54.1-2409.1(iii) where the evidence failed to show that Rhodes had been adequately advised that his license would remain suspended after he entered into a contract with the Virginia Health Practitioners' Monitoring Program until the Board formally advised Rhodes that the stay had been lifted five days later.
>
> 2. Because the evidence failed to prove that Rhodes was guilty of violating Code § 54.1-2409.1(iii), the circuit court erred in convicting Rhodes of violating Code § 18.2-178 as Rhodes could not have received money by false pretenses if he was not knowingly and willfully practicing chiropractic medicine in violation of Code § 54.1-2409.1(iii).
>
> 3. The circuit court erred in failing to grant the post-judgment motion to set aside the verdict on the grounds that the evidence failed to establish beyond a reasonable doubt that Rhodes knowingly and willfully violated Code § 54.1-2409.1(iii).

## ANALYSIS

I. <u>The Evidence was Sufficient to Prove Rhodes Violated Code § 54.1-2409.1(iii)</u>

In relevant part, Code § 54.1-2409.1 provides that "[a]ny person who . . . practices a profession or occupation after having his license . . . or multistate licensure privilege to do so suspended or revoked shall be guilty of a Class 6 felony." The statute itself does not require willfulness or intent. However, the indictments in this case alleged that Rhodes "willfully, unlawfully, and feloniously practice[d] a profession or occupation after having his license revoked or suspended." Both parties agree that where the indictment includes narrowing language, the prosecution must prove the offense as charged in the indictment. *See Purvy v. Commonwealth*, 59 Va. App. 260, 269 (2011) (noting that specific narrowing language in the indictment cannot be considered immaterial surplusage (citing *Commonwealth v. Nuckles*, 266

- 4 -

Va. 519, 523 (2003))).  Rhodes contends that the Commonwealth failed to establish a "willful" violation.

### A.  Rhodes' Testimony Did Not Establish an Advice of Counsel Defense

Rhodes does not challenge the prima facie case against him.  As he stated on brief, he "has never disputed that he treated patients [between November 1, 2018, and December 4, 2018]."  However, Rhodes argues that he introduced an "advice of counsel" defense, negating the "willful" element of the charge, and the Commonwealth failed to rebut it.[1]

Rhodes' "advice of counsel" argument fails here on factual grounds; the circuit court found his testimony incredible and "almost farcical."  Based on these findings, his "advice of counsel" defense—which was based entirely on his own rejected testimony—cannot survive.  With respect to the fact finder's reading of the evidence, "[t]he judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987) (citing Code § 8.01-680).  "The credibility of witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters solely within the province of the fact finder." *Carter v. Commonwealth*,

---

[1] Appellant notes several times that he relies on the advice of counsel defense, which includes an element of good faith. *See Nageotte v. Board of Supervisors of King County*, 223 Va. 259, 269 (1982) (finding there was no willful violation where the defendant failed to comply with a statute "while acting in good faith with the advice of counsel").  He also references a separate "good faith defense," citing to *Miller v. Commonwealth*, 25 Va. App. 727 (1997), for the premise that criminal liability can be negated where the defendant relied upon information from the government about the legality of his actions and his reliance was reasonable and in good faith.  This "good faith" defense "applies where a defendant has reasonably relied upon affirmative assurances that certain conduct is lawful, when those assurances are given by a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue." *Miller*, 25 Va. App. at 735.  Appellant "concedes that in forming his belief he did not seek an 'affirmative assurance' from the Board that his license remained active during the 30 days that he had to comply with the remedial provisions, as the defendant had done in *Miller*."  To the extent appellant relies on this "good faith" defense, his argument fails, as there is no evidence of reliance on any affirmative assurance from a public body.

38 Va. App. 116, 119 (2002). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Brown v. Commonwealth*, 75 Va. App. 388, 414 (2022) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

Rhodes asserts that his counsel told him he could continue to treat patients following the October 2018 suspension order. Rhodes did not produce any evidence of this, other than his own, discredited testimony.[2] Rhodes also acknowledged that he had prior misdemeanor convictions for crimes of moral turpitude.[3] *See Parr v. Commonwealth*, 198 Va. 721, 724 (1957) ("[P]roof of conviction of a misdemeanor involving moral turpitude is admissible to impeach the credibility of a witness . . . ."). Rhodes also admitted that he lied to the Board investigator. In its suspension order, the Board noted that Rhodes' testimony frequently conflicted with others, and it "did not find Dr. Rhodes to be believable," also noting he obfuscated and failed to answer the Board truthfully in his testimony at times. The circuit court, too, specifically found Rhodes "incredible," and his explanations "almost farcical."

---

[2] As a preliminary matter, we note that appellant does not cite any authority to suggest Virginia applies the advice of counsel defense in a criminal context and acknowledges the defense "is most often exercised in Virginia in a civil matter involving a tort." Because Rhodes' testimony as to the defense was roundly rejected by the fact finder, we find it unnecessary to reach the question of whether the defense applies to criminal matters in Virginia state courts. Federal courts have found that the defense can be permissible in a criminal context, where it is properly established by credible evidence. *See, e.g.*, *United States v. Painter*, 314 F.2d 939, 943 (4th Cir. 1963) ("If in good faith reliance upon legal advice given him by a lawyer . . . one engages in a course of conduct later found to be illegal, the trier of fact may in appropriate circumstances conclude that the conduct was innocent because the 'guilty mind' was absent."); *see United States v. Westbrooks*, 780 F.3d 593, 595-96 (4th Cir. 2015) (listing factors establishing claim).

[3] Rhodes was convicted of identity theft and obstruction of justice to avoid arrest following an incident in which Rhodes lied about his identity and gave his brother's information when stopped for speeding.

These findings regarding Rhodes' credibility rendered his advice of counsel defense unsalvageable. Such credibility determinations are entitled to great weight by this Court absent an abuse of discretion. Given Rhodes' confessed misstatements to the Board investigator, his false, initial denials that he treated any patients during the suspension, his credibility lapses, and past convictions, we cannot say the circuit court abused its discretion here when it rejected his testimony. *See Reed v. Commonwealth*, 62 Va. App. 270, 282 (2013). Ultimately, Rhodes produced no credible evidence to support an advice of counsel defense, and his purported defense fails.

### B. Rhodes' Alleged Interpretation of the Suspension Order Also Fails

Rhodes asserts "[t]he wording of the Board of Medicine's order did not provide Rhodes with adequate notice that he was required to await formal notification of the reinstatement of his license." He argues that ambiguities in the order (coupled with the advice of counsel) render the evidence insufficient to establish that he "willfully" violated the suspension order. We uphold the circuit court's finding that the order was not ambiguous. The order bluntly stated that his license "is SUSPENDED"; the order further explained that Rhodes' suspension would be stayed "upon proof of [his] entry into a contract" with HPMP. It did not in any way suggest that mere discussions with HPMP about a future agreement were sufficient to stay the suspension. The order clearly states that his license "is SUSPENDED" until a "contract" with HPMP is executed.

Rhodes attempts to circumvent this language by suggesting, again, that his interpretation of the order is reasonable given the advice of counsel. However, as noted previously, Rhodes' only evidence to support the advice of counsel defense is his own uncorroborated testimony which the circuit court found "incredible" and "almost farcical." The circuit court's finding that Rhodes willfully violated the order was not plainly wrong or without evidence to support it. We find no error in the circuit court's convictions under Code § 54.1-2409.1(iii).

II. The Evidence was Sufficient to Prove Rhodes Violated Code § 18.2-178 by Receiving Money Under False Pretenses

Rhodes also assigns error to the finding that he willfully received money under false pretenses—he asserts that because the prosecution failed to establish a willful violation of Code § 54.1-2409.1(iii), the false pretenses conviction cannot stand. However, as set out above, the evidence was sufficient to convict Rhodes for violating Code § 54.1-2409.1(iii) and there is no error in the circuit court's conviction under Code § 18.2-178. Rhodes' explanations for his conduct were flatly rejected by the fact finder. His credibility was expressly discredited by both the circuit court and the Board. He offered no corroborating evidence to bolster his advice of counsel claims. Rhodes provided no legitimate basis for believing he could practice during the suspension period. Thus, in addition to willfully practicing with a suspended license, he also improperly received payments for treatment he provided without a valid license.[4]

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed.*

---

[4] For the same reasons that the circuit court did not err in convicting Rhodes for violating Code §§ 54.1-2409.1(iii) and 18.2-178, the court similarly did not err in its denial of Rhodes' motion to set aside the verdict.